# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No.    '22 MJ3300
)
Blue Motorola Cell Phone )
Seized as FP&F No. 2022565300076401 Item 0002 )
("Target Device 1") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Giancarlo Lugo, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 09/09/2022

*Judge's signature*

City and state: San Diego, California       HON. David D. Leshner, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> Blue Motorola Cell Phone
> Seized as FP&F No. 2022565300076401 Item 0002
> **("Target Device 1")**
>
> Blue Apple iPhone
> Seized as FP&F No. 2022565300076402 Item 0001
> **("Target Device 2")**
>
> Silver Apple iPhone
> Seized as FP&F No. 2022565300076402 Item 0002
> **("Target Device 3")**
>
> Blue/Black One Plus Cell Phone
> Seized as FP&F No. 2022565300076403 Item 0002
> **("Target Device 4")**
>
> Gray Samsung Cell Phone
> Seized as FP&F No. 2022565300076404 Item 0003
> **("Target Device 5")**

(**"Target Devices"**), as further described in Attachments A-1, A-2, A-3, A-4, and A-5 to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of Jonathan AGUILAR, Mateo ESTRADA, Justin KELLY, and Pedro SOLIS for transporting and moving illegal aliens within the United States. The **Target Devices** are currently in the

custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2008 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for fourteen years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal

aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On September 8, 2022, Border Patrol Agent J. Arellano was assigned to checkpoint duties at the State Route 94 (SR-94) Brown Field Border Patrol Checkpoint located in Jamul, California. At approximately 8:59 AM, Department of Defense personnel operating a Mobile Scope Capabilities (MSC) observed several subjects loading into a gray Chrysler 300 and a Dodge Challenger. The MSC operators also observed a blue Ford Explorer following the Chrysler and Challenger and reported their observations to agents via service radio. Air and Marine Operations air support was in the area and followed the vehicles towards the SR-94 checkpoint.

12. At approximately 9:17 AM, agents observed the Chrysler enter the cone pattern of the SR-94 checkpoint. Agent Arellano approached the driver of the Chrysler, later identified as defendant Jonathan AGUILAR. AGUILAR did not respond to Agent Arellano's commands to stop and lower the windows. Agent Arellano withdrew his service weapon and pointed it at AGUILAR, shortly after AGUILAR complied and exited the vehicle. Agent Arellano detained AGULAR and escorted him inside the checkpoint.

5

1  Simultaneously Border Patrol Agent T. Tucciarone approached the front passenger, later
2  identified as defendant Mateo ESTRADA. Agent Tucciarone observed ESTRADA
3  lighting an inhaling a white glass pipe. Agent Tucciarone broke the passenger window to
4  extract ESTRADA, but the window did not fully break. ESTRADA then opened the door
5  and was placed in handcuffs by Agent Tucciarone. Border Patrol Agent C. Parsoneault
6  also approached the Chrysler, identified himself as a Border Patrol Agent and conducted
7  an immigration inspection of the rear passengers. The passengers, later identified as the
8  material witnesses, Martha Fabiola LOPEZ-Lopez, Jose PEREZ-Lopez, and J.J.M.V
9  (juvenile) stated they are citizens of Mexico without immigration documents allowing them
10 to enter or remain in the United States legally. At approximately 9:25 AM, Agent C
11 Parsoneault placed LOPEZ, PEREZ, and J.J.M.V under arrest. At approximately 9:25 AM.
12 Agent Arellano placed AGUILAR under arrest. At approximately 9:25 AM, Agent
13 Tucciarone placed ESTRADA under arrest.

14       13.   Immediately after, the Challenger approached the SR-94 checkpoint. Border
15 Patrol Agent A. Aguilar approached the passenger side of the vehicle and identified himself
16 as a Border Patrol Agent. Agent Aguilar noticed one individual kneeling on the front
17 passenger floorboard concealing himself with a sweatshirt and two individuals in the rear
18 seats laying on each other. Agent Tucciarone approached the driver, later identified as
19 defendant Justin KELLY, and order him to turn off the vehicle. Agent Tucciarone detained
20 KELLY and Agent Aguilar took KELLY and the passengers inside the checkpoint. Inside
21 the checkpoint, Agent Aguilar conducted an immigration inspection of the rear passengers,
22 later identified as the material witnesses Onelio DOMINGUEZ-Diaz, Rosemberg PEREZ-
23 Gonzalez, and Mauro Miguel RAMIREZ-Pinacho. DOMINGUEZ, PEREZ, and
24 RAMIREZ stated they are citizens of Mexico without immigration documents allowing
25 them to enter or remain in the United States legally. At approximately 9:27 AM, Agent
26 Aguilar placed DOMINGUEZ, PEREZ, and RAMIREZ under arrest. At approximately
27 9:28 AM, Agent Tucciarone placed KELLY under arrest.
28

14. Agent Arellano was informed that the Explorer was three to four car lengths behind the Challenger and Agent Arellano walked up the driver and identified himself as a Border Patrol Agent. Agent Arellano detained the driver, later identified as defendant Pedro SOLIS, and took him inside the checkpoint. Inside the checkpoint, at approximately 9:30 AM, Agent Arellano placed SOLIS under arrest.

15. At the time of arrest, a blue Motorola cell phone **(Target Device 1)**, was found in AGUILAR's pocket, a blue Apple iPhone **(Target Device 2)** was found on the passenger seat where ESTRADA was sitting, a silver Apple iPhone **(Target Device 3)** was found on ESTRADA's lap, a blue and black One Plus cell phone **(Target Device 4)** was found in KELLY's pocket, and a gray Samsung cell phone **(Target Device 5)** was found in SOLIS's pocket. All subjects claimed ownership to their respective **Target Devices**.

16. The defendant Pedro SOLIS was read his Miranda Rights and was willing to speak without the presence of an Attorney. SOLIS gave inconsistent statements regarding his work schedule that day. SOLIS stated that he was in the area because he was dropping of a co-worker in Tecate, California. SOLIS stated that he stopped and talked to Justin KELLY because he's his sisters ex-boyfriend.

17. Material Witnesses Onelio DOMINGUEZ-Diaz, Martha Fabiola LOPEZ-Lopez, Rosemberg PEREZ-Gonzalez, Jose PEREZ-Lopez, Mauro Miguel RAMIREZ-Pinacho, and J.J.M.V stated that they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. DOMINGUEZ, LOPEZ, PEREZ-Gonzalez, PEREZ-Lopez, RAMIREZ, and J.J.M.V stated that they had smuggling arrangement in which they were going to pay between $8,000 USD to $10,0000 USD.

18. Material witnesses LOPEZ, PEREZ-Lopez, and J.J.M.V were apprehended in a Chrysler 300. PEREZ-Lopez stated that the smuggling coordinator told him that a vehicle would arrive at their location and honk. PEREZ-Lopez stated that when the vehicle arrived, he heard honking. J.J.M.V stated that the foot guide made the vehicle

7

arrangements via cell phone and that the vehicle would be a black sports car. J.J.M.V stated that the foot guide and the passenger of the black vehicle told them to get in the car. When shown a photographic lineup, PEREZ-Lopez and J.J.M.V were able to identify defendant Mateo ESTRADA, as the front passenger of the Chrysler 300.

19. Material witnesses DOMINGUEZ, PEREZ-Gonzalez, and RAMIREZ were apprehended in a Dodge Challenger. DOMINGUEZ, PEREZ, and RAMIREZ and stated that they were smuggled into the United States with the help of a foot guide who also made the arrangements for a vehicle to pick them up. When shown a photographic lineup, DOMINGUEZ and PEREZ were able to identify defendant Justin KELLY, as the driver of the Dodge Challenger.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that defendants Jonathan AGUILAR, Mateo ESTRADA, Justin KELLY, and Pedro SOLIS were using the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the defendants, AGUILAR, ESTRADA, KELLY, and SOLIS to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **August 8, 2022, through September 8, 2022**.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days from the date this warrant is signed, absent further application to this court.

9

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

24. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

25. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

26. Because the **Target Devices** were seized at the time of AGUILAR, ESTRADA, KELLY, and SOLIS' arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **August 8, 2022, through September 8, 2022.**

27. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachments A-1, A-2, A-3, A-4, A-5 and seized the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this ___9th___ day of September, 2022.

Hon. David D. Leshner
United States Magistrate Judge

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Blue Motorola Cell Phone
>Seized as FP&F No. 2022565300076401 Item 0002
>**("Target Device 1")**

Target Device 1 is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

11

# ATTACHMENT B

## ITEM TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1, A-2, A-3, A-4, and A-5 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **August 8, 2022, through September 8, 2022:**

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.